**NOT FOR PUBLICATION**                                              **[12]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
OSCAR DOVALE,                                  :        Civil Action No. 05-2872 (FLW)
:
        Plaintiff,            :
:                 **OPINION**
   v.                                  :
:
MARKETSOURCE, INC.,                         :
:
        Defendant.            :
_____:


APPEARANCES:

For Plaintiff:
I. MICHAEL HEINE
HEINE ASSOCIATES, P.A.
1008 ASTORIA BLVD., SUITE F
CHERRY HILL, NJ 08003

For Defendant:
MARK PATTON LUEDEKE
MORGAN LEWIS & BOCKIUS
502 CARNEGIE CENTER
PRINCETON, NJ 08540

**<u>WOLFSON, United States District Judge:</u>**

     Plaintiff Oscar Dovale ("Plaintiff" or "Dovale") has brought suit against Defendant

Marketsource, Inc. ("Defendant" or "Marketsource"), alleging that Marketsource was unjustly

enriched by Plaintiff's on-air selling of Hewlett-Packard ("Hewlett-Packard" or "HP") computer

products on the QVC television network ("QVC").  Plaintiff alleges that he worked for

Defendant at the time of the on-air performances at issue but that his "at will understanding did

not include on-air selling." He further alleges that while Marketsource was compensated from

HP as result of the on-air selling at issue, Marketsource did not compensate him for the on-air

performances. Marketsource has filed a motion for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c). The issue before the Court is whether Dovale's unjust

enrichment claim can survive Defendant's motion for judgment on the pleadings. For the

reasons set forth below, Defendant's motion for judgment on the pleadings is denied and the case

is remanded to state court because it appears to a legal certainty that Plaintiff's claim does not

satisfy the minimum amount in controversy required by 28 U.S.C. § 1332.

## I.  BACKGROUND

Marketsource is an outsourcing provider of business-to-business and business-to-

consumer marketing services for the Fortune 1000 companies. Marketsource Home Page,

http://www.marketsource.com/. Specifically, Defendant provides market research, inside/outside

sales support, profiling, promotions, and merchandising services to its corporate clients. Id.

Dovale alleges that from January 2003 through October 2004, he was employed by Defendant as

an on-air personality to sell Hewlett-Packard computer products on QVC. First Federal Am.

Compl. ¶ 6. The parties agree that at the conclusion of this period, Plaintiff's on-air selling

responsibilities were reduced in some capacity. According to Plaintiff, in October 2004, his

employment as an on-air representative was terminated as a result of HP's decision to curtail its

on-air selling program; however, in November 2004, he continued to work for Defendant as an

at-will employee and performed sales management services concerning retail store territorial

events and sales programs of HP products. First Federal Am. Compl. ¶ 7-8. Defendant "admits

that Plaintiff's on-air assignment was reduced in or about October 2004 but denies that his on-air assignment was terminated entirely."  Def.'s Answer ¶ 7.

On or about January 15/16, 2005, Plaintiff alleges that he was asked by Defendant to appear on-air as a salesman in an HP product program scheduled for February 20, 2005 on QVC. Pl.'s First Federal Am. Compl. at ¶ 11.  He also alleges that from January 15-16, 2005 " through the time of performance (February 20, 2005), Defendant gave Plaintiff repeated assurances that he would be compensated and would be treated fairly and properly."  Id. ¶ 10.  Despite not receiving "any specific concrete and acceptable assurances of compensation," Dovale performed the broadcast, purportedly selling $7 million in HP products during a 24 hour period.  Id. Plaintiff alleges that he expected to be fully compensated for these services and alleges that Defendant understood Plaintiff's expectation of this compensation and assured him that he would be compensated.  Id. at ¶ 13.   Defendant maintains that it paid Plaintiff a regular salary but never gave him any assurances that he would ever be compensated beyond that regular salary for his work on February 20, 2005.  Def.'s Answer ¶ 13.

On April 13, 2005, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Burlington County, alleging that the Defendant was unjustly enriched by his February 20, 2005 on-air performances.  On May 3, 2005, Plaintiff filed an Amended Complaint in state court.[1]  Defendant removed the case to federal court on June 3, 2005, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Thereafter, Plaintiff filed his "First Federal Amended Complaint for Damages and Jury Demand" on June 9, 2005, reasserting his unjust enrichment

_____

[1]It appears as though Plaintiff sought to add two parties–Marketsource Sales Service LLC and Marketsource LLC–as defendants with the filing of his Amended Complaint.  However, they were not properly served with the Amended Complaint and are not participating in the case.

3

claim and alleging that "[t]he value of the matter in controversy <u>does not exceed $75,000</u>, exclusive of interest and costs."  First Federal Am. Compl. at ¶ 2 (emphasis in original).

On June 27, 2005, Defendant filed its Answer.  Defendant attached to its Answer a written employment agreement dated July 7, 2000 that Dovale had purportedly entered into with Marketsource.  Employment Agreement at 1; Ex. to Def.'s Answer.  According to the contract, Plaintiff was to serve as an on-air sales representative for HP products and was to be compensated through an annual salary plus employment benefits (i.e. profit sharing, life and medical insurance plans).  <u>Id.</u> at 1, 2.  The contract served to "memorialize the terms upon which [Dovale's] employment shall continue from the date of [the] Agreement forward." <u>Id.</u> at 1.  The agreement does not explicitly set forth the terms and responsibilities of Dovale's employment; rather, it requires him to "render such services and perform such duties as are customarily performed by one holding such position in other businesses or enterprises of the same or similar nature as that engaged in by [Marketsource]."  <u>Id.</u>  According to the agreement, Dovale "agrees to render such other related and unrelated services and duties as assigned from time to time by [Marketsource]."  <u>Id.</u>  The agreement further provides that either party may terminate the employment "<u>without 'cause'</u> upon two (2) weeks written notice." <u>Id.</u> at 3 (emphasis in original). Marketsource also reserved the right to immediately terminate Dovale's employment "<u>with 'cause'</u>." <u>Id.</u> (emphasis in original).  The agreement defines 'cause' as including but not limited to "any act of dishonesty toward [Marketsource], failure to perform duties in a competent or professional manner, and any material breach of Employee's obligations [under the Employment Agreement]." <u>Id.</u>  Plaintiff initialed each page of the Employment Agreement.  However, neither Plaintiff's signature nor that of a representative of Defendant is affixed to the signature section of

4

the agreement.  Plaintiff concedes that this contract existed, <u>see</u> Pl.'s Opp. Br. at 7, and does not

raise the lack of signatures as an issue in opposing the instant motion for judgment on the

pleadings.

Plaintiff filed a motion to remand the matter on July 11, 2005.  On October 7, 2005, the

Court issued an Order denying the Plaintiff's motion to remand for lack of subject matter

jurisdiction.  The Court held that since neither the Plaintiff's Initial Complaint or First Amended

Complaint specified an amount of damages, it was proper to estimate the amount in controversy

at $150,000 based on Plaintiff's prior demand to settle the case.  <u>Dovale v. Marketsource, Inc.,</u>

05-CV-2872,  Order (Oct. 7, 2005) at ¶ 5.  Subsequently, Defendant filed the instant motion for

judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

In connection with its motion, Defendant attached a copy of a 2002 marketing services

agreement between Defendant and HP.  <u>See</u> Marketing Services Agreement and Amendment 3 to

Marketing Services Agreement; Ex. to Luedeke Cert. Pursuant to this agreement, Marketsource

was to promote and sell HP products on-air on QVC in consideration for HP's payment of

Marketsource's costs associated with maintaining a broadcast representative and a contractually

determined profit margin.  <u>Id.</u>  According to the Agreement and Amendment 3 thereto, the

contract pricing, including compensation for all costs incurred by Marketsource in maintaining a

broadcast representative, was not to exceed $97,000 per year, and the Agreement's effective term

was from August 2002 through October 2005.  <u>Id.</u>  Specifically, the contract pricing was to

"cover all fees of [Marketsource], costs of operation, fringe benefits attributable to payroll,

overhead, profit, social security charges and all applicable taxes." <u>Id.</u>  In return, Marketsource

was to "represent HP and its products during live TV broadcasts" by, among other things,

providing a representative to deliver on-air sales broadcasts on behalf of HP.  Id.  According to the agreement, the duties of the broadcast representative were extensive, including but not limited to, preparing for shows and representing HP on-air up to a combined forty hours per week, participating in and facilitating various training activities with HP and QVC representatives, and traveling to broadcast locations as scheduled events required.  Id.  According to the contract, the total yearly cost of the broadcast representative, not including margin and overheard, was $69,437.  Id.

In opposing the motion, Plaintiff has attached as exhibits to his opposition papers several emails from Marketsource and Hewlett-Packard employees.  One email was written by Brian Kava of Marketsource on January 5, 2005, and was addressed to a number of individuals, including Dovale.  The email explains Dovale's "role as the Event Development Specialist" and provides that "Oscar [Dovale] should not be utilized for covering special events with the exception of ... some of the remaining QVC ... events."  Email from Brian Kava, Employee of Marketsource, Inc., to, among others, Oscar Dovale, Employee of Marketsource, Inc. (Jan. 5, 2005); Pl.'s Ex. B.

Plaintiff has also provided the Court with an email from Debbie Lemon of Marketsource addressed to Plaintiff and Jessica Stone, which provides: "I want to make sure on one thing - Oscar is no longer a dedicated QVC rep.  He is not the Event Day Specialist and every QVC request needs to be billed as a special event." Email from Debbie Lemon to Jessica Stone and Oscar Dovale (Feb.16, 2005); Pl.'s Ex. E.

Donna Black of Hewlett-Packard directed an email to Jessica Stone which provides:

As you know, I have to cover expenses and services for Oscar Dovale to complete the on air show on QVC.  In the past, I did not cover Oscar's pay[,] just his expenses.  My concern is that since he is in a new position and on a new pay scale, that he will not be compensated at the same rate as his [sic] was in the past.

Unfortunately, I don't know what his pay was in the past, however, I wanted to make sure he is compensated for the work on preparing for a live broadcast and conducting a presentation on live TV.

When we hired reps outside of Marketsource and HP, we paid them $500-$2500 a day depending on their experience.

Email from Donna Black, Employee of Hewlett-Packard, to Jessica Stone (Feb. 17, 2005); Pl.'s Ex. D.

Prior to the February 20, 2005 QVC event, Jessica Stone, a Marketsource employee, sent an email to Plaintiff, informing him that: "If you are to work this weekend, I want to make sure you are properly compensated for your extra hours.  Normally ... we pay those hours out at the standard ESD the rate of $15/hr."  Email from Jessica Stone, Employee of Marketsource, Inc., to Oscar Dovale, Employee of Marketsource, Inc. (Feb. 18, 2005); Pl.'s Ex. C.

## II. DISCUSSION

### A.  Judgment on the Pleadings Standard

The difference between a motion to dismiss pursuant to Rule 12(b)(6) and a motion pursuant to Rule 12(c) is a matter of timing. Motions brought pursuant to Rule 12(b) must be filed before any responsive pleading.  Fed. R. Civ. P. 12(b); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir.1991).  A Rule 12(c) motion to dismiss is available after a responsive pleading has been filed.  Id. at 428.  Regardless of which rule is appropriate, the same standard applies. Id.; Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004) ("There is no material difference in the applicable legal standards").  In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all allegations in the Plaintiff's Complaint and all reasonable inferences that can be drawn therefrom after construing them in the

light most favorable to the non-movant. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). A pleading may be dismissed for "failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." Hedenburg v. Bando American, Inc., 1992 WL 443432, at *4 (D.N.J. Mar.3, 1992) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Courts are required when conducting the 12(b)(6) inquiry to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir.2002).  Nevertheless, legal conclusions offered in the guise of factual allegations are given no presumption of truthfulness. Chugh v. Western Inventory Services, Inc.,333 F.Supp.2d 285, 289 (D.N.J. 2004)(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Therefore, in ruling on a Rule 12(b)(6) motion, courts can and should reject "legal conclusions," "unsupported conclusions," "unwarranted references," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions in the form of actual allegations." Morse v. Lower Merion School Dist., 132 F.3d 902,  907, n.8 (3d Cir.1997).

On a motion to dismiss the Court may not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint. Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted); Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 n. 3 (3d Cir.1999); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993);  see also Mele v. Fed.

Reserve Bank of N.Y., 359 F.3d 251, 256 n. 5 (3d Cir.2004) (applying same to Rule 12(c)

motion for judgment on the pleadings).

      Thus, "[p]laintiffs cannot prevent a court from looking at the texts of the documents on

which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997).  "A 'document integral to or explicitly

relied on in the complaint' may be considered 'without converting the motion into one for

summary judgment.'" Id. (citation omitted). Any further expansion beyond the pleading,

however, may require conversion of the motion into one for summary judgment. Fed. R. Civ. P.

12(b).  "[A] court may consider an undisputedly authentic document that a defendant attaches as

an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a

plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to

attach a dispositive document on which it relied." Pension Benefit Guaranty Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). Consideration of these referenced

documents will not require the conversion of a motion to dismiss to one for summary judgment

under Fed. R. Civ. P. 12(b)(6). "The reason that a court must convert a motion to dismiss to a

summary judgment motion if it considers extraneous evidence submitted by the defense is to

afford the plaintiff an opportunity to respond. When a complaint relies on a document, however,

the plaintiff obviously is on notice of the contents of the document, and the need for a chance to

refute evidence is greatly diminished." Id. at 1196-97.  Even if a "[c]omplaint does not explicitly

refer to or cite [a document] ... the critical [issue] is whether the claims in the complaint are

'based' on an extrinsic document and not merely whether the extrinsic document was explicitly

cited." Burlington Coat, 114 F.3d at 1426 (emphasis in original) (citation omitted).  Pursuant to

Federal Rule of Civil Procedure 12(c), this Court has the discretion to convert this motion for judgment on the pleadings to one for summary judgment should it choose to consider anything outside of the pleadings, exhibits attached thereto, matters of public record, and all documents that are integral to or explicitly relied upon in the complaint.  Fed R. Civ. P. 12 (c).  If the Court chooses to convert the motion, the "parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed R. Civ. P. 12 (c).

Plaintiff alleges in the First Federal Amended Complaint that "Defendant has been compensated by HP for providing services which have been furnished by Plaintiff." First. Federal Am. Compl. ¶ 14.  Moreover, Plaintiff explicitly mentioned Marketsource's "contractual agreement with HP" in his First Federal Amended Complaint.  Id. ¶ 8.  As such, the Marketing Services Agreement and Amendment 3 to that agreement, which were submitted as an exhibit to the Luedeke Certification and govern the business relationship between Marketsource and HP, are integral to the First Federal Amended Complaint.  Therefore, the Court may consider them without converting the instant motion into one for summary judgment.[2]

Defendant also asks the Court to consider the employment contract purportedly entered into by the parties without converting the motion into one for summary judgment.  In the First Federal Amended Complaint, Plaintiff alleges that he was an at-will employee for Marketsource, but does not specify whether the parties were operating under an employment contract during the relevant time period or if he was employed at-will without a contract.  First. Federal Am. Compl. ¶¶ 6-7.  In his opposition brief, Plaintiff makes clear that he has alleged the latter–that he was

---

[2]Plaintiff does not oppose the Court's consideration of the Marketsouce-HP marketing services agreement.

employed at-will without a contract–because he contends in his brief that the employment contract attached to Defendant's Answer was "expired and unenforceable" because it was not "in place during the relevant time period" and did not "encompass[] the services at issue" here.  Pl.'s Opp. Br. at 6-7.

Defendant argues that because this contract is attached to its Answer, the Court may consider it without converting the motion for judgment on the pleadings into one for summary judgment, and cites two cases–<u>Northern</u> <u>Indiana Gum & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F.3d 449, 452 (7th Cir 1998) and <u>Menifee v. Rexam, Inc.</u>, 2005 WL 2230257, *2 (N.D. Ohio Sept. 13, 2005)–in support of this proposition.  Relying upon Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," and, Rule 7(a), which provides that an answer, like a complaint, is a pleading. <u>Fed. R. Civ. P.</u> 7(a), 10(c), these cases support the notion that the Court may properly consider an exhibit to the answer without converting the motion into one for summary judgment. <u>See</u> <u>Northern</u> <u>Indiana Gum & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F.3d 449, 452 (7th Cir 1998); <u>Menifee v. Rexam, Inc.</u>, 2005 WL 2230257, *2 (N.D. Ohio Sept. 13, 2005); <u>see also</u> <u>Ackah v. Hershey Foods Corp.</u>, 236 F. Supp.2d 440, 443 (M.D. Pa.2002) (finding it appropriate, in deciding a Rule 12(c) motion filed by the defendant, to consider the plaintiff's complaints to the Pennsylvania Human Rights Committee and the EEOC, which the defendant had attached to its answer).  Thus, the employment contract attached to Defendant's Answer may be considered by the Court without converting the instant motion into one for summary judgment.  However, Defendant is not merely asking the Court to consider the employment contract; Defendant is asking the Court to consider the contract <u>and</u> accept its

allegation that this contract is "valid" and "enforceable."  Def.'s Moving Br. at 4.  However, on a motion for judgment on the pleadings, the Court must accept the facts alleged in the complaint as true.  Even <u>Menifee v. Rexam, Inc.</u>, cited by Defendant, makes this point very clear.  <u>Menifee v. Rexam, Inc.</u>, 2005 WL 2230257 at *2 ("all allegations of the moving party which have been denied by the non-moving party must be taken as false").  Here, Plaintiff denies that the contract is valid and enforceable.  Therefore, for the purposes of this motion, Plaintiff's allegation that the contract no longer governed the parties' relationship in 2005 must be accepted.  For the Court to accept Defendant's position that the contract was valid and enforceable in connection with a motion for judgment on the pleadings would require proof outside the pleadings which would convert the motion into one for summary judgment.

Indeed, pursuant to Federal Rule of Civil Procedure 12(c), this Court has the discretion to convert this motion for judgment on the pleadings to one for summary judgment should it choose to consider anything outside of the pleadings, exhibits attached thereto, matters of public record, and all documents that are integral to or explicitly relied upon in the complaint.  In that connection, Plaintiff has identified and attached four emails as extrinsic evidence that he would like the Court to consider in connection with this motion.  Since Plaintiff refers to the emails as "extrinsic," he has effectively conceded that such evidence could not be properly considered by Court on a motion for judgment on the pleadings.  While Plaintiff does not explicitly ask the Court to convert the motion into one for summary judgment, by attaching the four emails and referring to them as "extrinsic," the Court presumes that Plaintiff seeks such a conversion.  Defendant, on the other hand, objects to its motion being treated as one for summary judgment.

If the Court were to convert the motion into one for summary judgment, I would have to provide the parties with notice of the conversion so that they have a reasonable opportunity to present all material relevant to a summary judgment motion.  Fed R. Civ. P. 12 (c); see In re Rockefeller Center Properties, Inc. Securitites Litigation, 184 F.3d 280, 288 (3d Cir 1999); Rose v. Bartle, 871 F.2d 331, 340 (3d Cir.1989).  In In re Rockefeller Center Properties, Inc., defendants filed a motion to dismiss and did not frame it in the alternative as a motion for summary judgment.  In re Rockefeller Center Properties, Inc., 184 F.3d at 288.  The district court converted the motion into one for summary judgment but did not inform the parties of its intention to convert the motion until it granted summary judgment.  Id. The Third Circuit found that the district court did not provide adequate notice of conversion to the parties and rejected defendants' argument that plaintiffs had constructive notice of conversion because they submitted materials outside of the pleadings.  Id.  Here, Defendant's motion for judgment on the pleadings was not alternatively briefed as a motion for summary judgment, neither party explicitly requested that I convert the motion, and I did not provide the parties with notice of conversion.[3]  Therefore, I will not convert the instant motion and I will treat it as a motion for judgment on the pleadings.

---

[3]Although In re Rockefeller Center Properties, Inc. was decided in the context of a motion brought pursuant to Federal Rule of Civil Procedure 12(b) as opposed to Rule 12(c), that is not a meaningful distinction, especially since Rule 12(b) contains language identical to that contained in Rule 12(c). See Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

**B. Plaintiff's Claim For Unjust Enrichment**

"Under New Jersey law, '[t]he constructive or quasi-contract is the formula by which enforcement is had of a duty to prevent unjust enrichment or unconscionable benefit or advantage.' " Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226 (3d Cir.1983) (quoting Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 29 (1958)) (alteration in original). "Quasi-contractual obligations are imposed by the law for the purpose of bringing about justice." Id. Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. National Amusements, Inc. v. N.J. Tpk. Auth., 261 N.J.Super. 468, 478 (Law Div.1992), aff'd,275 N.J.Super. 134 (App.Div.1994).  Under New Jersey law, to state a claim for unjust enrichment, a plaintiff must allege "both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (holding that real estate broker could not place an equitable lien on rents owed to landowner for procurement commissions owed to broker by previous landowner because current landowner did not receive unexpected benefit from previous landowner's nonpayment).  Finally, a plaintiff must also allege that it "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that failure of remuneration enriched defendant beyond its contractual rights." Id.

Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties. Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir.1982); see also Suburban Transfer, 716 F.2d at 226. Therefore, recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory. See id.; see also Caputo v. Nice-Pak Prods., Inc., 300 N.J.Super. 498, 507 (App. Div.1997);  42 C.J.S. Implied Contracts § 5 (2005)

("The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties.  The doctrine does not operate to rescue a party from the consequences of a bad bargain, and the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract.") (citation omitted).  The authority of an express contract will take precedent over a theory of unjust enrichment or quasi-contract liability concerning the identical subject matter since "[t]he parties are bound by their agreement, and there is no ground for implying a promise so long as a valid unrescinded contract governs the rights of the parties." Suburban Transfer Serv., Inc. v. Beech Holdings, Inc., 716 F.2d 220, 226-27 (3d Cir. 1983).  In sum, the rule that an express contract excludes an implied one is "well settled." Moser v. Milner Hotels, Inc., 6 N.J. 278, 280 (1951) .

Here, notwithstanding the fact that over four and-a-half years elapsed between July 7, 2000, the date of the employment contract, and February 20, 2005, the date of the performances at issue here, Defendant urges the Court to accept its allegation that the employment contract was still valid and unrescinded on February 20, 2005, and that it governs the rights of the parties such that quasi-contract liability cannot be imposed against it.   However, as I stated earlier, it would be inappropriate on a motion for judgment on the pleadings to accept such a contention since Plaintiff alleges and maintains otherwise.  Thus, given this barren record and Plaintiff's allegations, which I must accept as true, I cannot grant Defendant's motion, which relies on the existence of the employment contract.

Defendant also argues that because Plaintiff was an at-will[4] employee, it "was free to assign Plaintiff any job duties it felt appropriate and (subject to minimum wage and overtime laws) to pay him whatever salary it saw fit." Def.'s Reply Br. at 4.  In support of this proposition, Defendant cites to several cases, including Mita v. Chubb Computer Services, Inc., 337 N.J. Super. 517, 526 (App. Div. 2001) ("An employer is free to change the terms of employment. This power includes the right to impose new requirements on the employee."), Winslow v. Corporate Express, Inc., 364 N.J. Super. 128, 139 (App. Div. 2003) (employer was free to change the method by which at-will employee's commissions were calculated), and Ackerman v. Money Store, 321 N.J. Super. 308, 321 (Law Div. 1998) ("employers, because of the concept of employment-at-will, are free to change the terms of employment by requiring, for example, employees to become certified in a certain profession or field").  Plaintiff does not dispute that he was an at-will employee; in fact, he specifically alleges that he was at-will.  Rather, he alleges that Defendant assured him that he would be compensated for his work on February 20, 2005. First. Federal Am. Compl. ¶ 10.  The Court must accept this allegation as true on a 12(c) motion. Even the Mita case, cited by Defendant, provides that "modification of the employment-at-will status may occur through oral promises of the employer." 337 N.J. Super. at 526.  Therefore, it is premature to dismiss Plaintiff's claims on these grounds, as well.

Defendant has also cited a number of cases that stand for the proposition that a salaried, at-will employee may not assert a claim for unjust enrichment which seeks compensation for

---

[4]While the parties disagree about the enforceability of the employment contract, they agree that Plaintiff's employment with Marketsource was at-will. An employee may have a contract for at-will employment, see Noto v. Skylands Community Bank, 2005 WL 2362491 at *6 (N.J. Super. App. Div. 2005).

duties performed while being paid an annual salary.  See Kern v. GE Capital Info. Tech. Solutions, No. 3:01-CV-2109-P, 2003 WL 22433817 (N.D. Tex. Feb. 19, 2003); Appleton v. Bondurant & Appleton, P.C., 2005 WL 3579087 (Va. Cir. Ct. Feb. 28, 2005); Rodriguez v. Vision Correction Group, Inc., 580 S.E.2d 266, 268 (Ga. Ct. App. 2003); Shannon v. S. Co. Energy Mktg., L.P., No. 14-01-01165, 2002 Tex. App. 2002 WL 1733243 (Tex. Ct. App. July 25, 2002).  However, none of these cases are binding upon this Court and all were decided at the summary judgment, not dismissal on the pleadings, stage.

Furthermore, as with any implied contract, to recover under a theory of unjust enrichment, a plaintiff must allege that there was a reasonable expectation of compensation in exchange for performance of an obligation:

> [A] defendant is obligated to pay for services rendered for it by plaintiff, if the circumstances are such that plaintiff reasonably expected defendant to compensate it, and if a reasonable person in defendant's position would know that plaintiff was performing the services in confidence that defendant would pay for them. Wanaque Borough Sewage Auth. v. Twp. of W. Milford, 281 N.J. Super. 22, 30 (App. Div. 1995), rev'd in part, 144 N.J. 564, 575 (1996) (but affirming the Appellate Division on the issue of quasi-contract).

It is a firmly established principle of New Jersey law that "when a person, with expectation of remuneration, confers benefits of service ... upon another, ... it would be unjust and inequitable for the person receiving the benefits to retain them without compensation." Rabinowitz v. Mass. Bonding & Ins. Co., 119 N.J.L. 552, 556 (N.J. 1938).  As such, it is well-settled in New Jersey law that a plaintiff must allege that he reasonably expected compensation to state a claim for unjust enrichment.  Calano v. Oakwood Park Homes Corp, 91 N.J. Super. 105, 109 (App. Div. 1996) (recognizing that a common thread running throughout successful claims for quasi-

contractual liability has been that the "plaintiff expected remuneration from defendant");

County of Essex v. First Union Nat'l Bank, 373 N.J. Super. 543, 550 (App. Div. 2004), rev'd in

part, 186 N.J. 46, 56, 62 (2006) ("The most common circumstance for application of unjust

enrichment is when a plaintiff has not been paid despite having had a reasonable expectation of

payment for services performed or a benefit conferred."); VRG Corp., 135 N.J. at 554 (unjust

enrichment requires that plaintiff show expectation of remuneration from defendant ); Castro v.

NYT Television, 370 N.J. Super. 282, 299-300 (App. Div. 2004) (unjust enrichment not

appropriate because "[a]bsent express agreement, a member of the general public who is subject

to videotaping for a television program cannot reasonably expect that he or she will receive

payment from the producer of the show").

      Defendant argues that Plaintiff's claim is deficient because he does not allege in his

Complaint that he reasonably expected compensation for the February 20, 2005 performances.

Specifically, Defendant construes Plaintiff's allegation that he "had not received any specific[,]

concrete and acceptable assurances of compensation," First Federal Am. Compl. ¶ 11, as an

acknowledgment that "no assurances of payment had been provided to him by Marketsource."

Def.'s Moving Br. at 5.  The Court disagrees.  In paragraph ten of Plaintiff's Complaint, he

alleges that "Defendant gave Plaintiff repeated assurances that he would be compensated." Id. ¶

10.  Plaintiff's allegation in the very next paragraph that he "had not received any specific[,]

concrete and acceptable assurances of compensation," First. Federal Am. Compl. ¶ 11, can be

read to signify the uncertainty regarding the amount of said compensation, not the issuance of the

assurances.  Thus, these allegations do not conflict and the Court must accept both allegations as

true for the purposes of this motion.  As such, Plaintiff alleges that he reasonably expected

18

compensation for the February 20, 2005 performances and his claim is not deficient for lacking such an allegation.

In order to bring a claim for unjust enrichment, a plaintiff must allege that the defendant was enriched beyond what it was otherwise fairly entitled.  The New Jersey Supreme Court has noted that in order to state a claim for unjust enrichment, a plaintiff must allege that "the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp., 135 N.J. at 554. Therefore, a defendant may defeat a claim for unjust enrichment by establishing that the benefit received was predetermined in a valid contract before that benefit was conferred by the plaintiff. See St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am., 32 N.J. 17, 23 (1960) ("[F]rom defendant's point of view, it cannot be said that it accepted a benefit which enriched it beyond its contractual right.  Therefore, there could be no recovery in Quasi-contract."); see also Suburban Transfer Serv., Inc. , 716 F.2d at 227 (finding that unjust enrichment claim failed because defendant had not received any benefit to which it was not entitled under the terms of the relevant agreement).

In this case, Plaintiff argues that Marketsource was enriched beyond its contractual rights by his work on February 20, 2005, and contends that the Court must accept this allegation as true since it is alleged in paragraph 14 of the complaint.[5]  Pl.'s Opp. Br. at 9.  Since Marketsource's "contractual agreement with HP" is integral to the complaint and explicitly mentioned therein, I determined that I would consider the Marketing Services Agreement and Amendment 3 to that

---

[5]Plaintiff also suggests in his brief that Defendant received some non-monetary compensation as a result of his work on February 20, 2005.  Pl.'s Opp. Br. at 9.  However, the complaint makes no mention of a non-monetary benefit and Defendant does not further explain in his brief whatever non-monetary benefit he believes Defendant received.

agreement, in connection with deciding the instant motion.  See supra Discussion § II(A).

Amendment 3 makes clear that HP was to pay Marketsouce "a not to exceed amount of $97,000

per year" for providing broadcast representative services to HP.  Amendment 3 to Marketing

Services Agreement; Ex. to Luedeke Cert.

There is nothing in Amendment 3 that provides that Marketsource's compensation from

HP is related to the amount of sales that the broadcast representative secured for HP.

Amendment 3 to Marketing Services Agreement; Ex. to Luedeke Cert.  Defendant argues that it

was not enriched by Plaintiff's work on February 20, 2005 because it would have been entitled to

an amount not to exceed $97,000 even if Plaintiff had not sold any HP products on that day.

Def.'s Moving Br. at 8.  Defendant also represents that "[t]he 'not to exceed' language was used

because, in the event that an employee in the position left Marketsource and the position was

open for a period of time, HP would not have to pay the full $97,000."  Def.'s Moving Br. at 8, n.

1.  While it would not be appropriate for the Court to consider such a representation on a motion

for judgment on the pleadings, doing so does not resolve the ambiguity of the "not to exceed"

language or aid Defendant's case since it suggests that HP might have paid Marketsource less

had Plaintiff not worked on February 20, 2005.  Therefore, it is premature at this juncture to

decide the issue of whether Marketsource was enriched beyond its contractual rights by

Plaintiff's work on February 20, 2005.  Therefore, given Plaintiff's allegations, which state a

claim under the notice pleading standard, dismissal is not appropriate and Defendant's motion for

judgment on the pleadings is denied.

### C.  Minimum Amount in Controversy

It is appropriate at this juncture, though, for the Court to re-examine whether it has jurisdiction over this case, since a federal court has a continuous obligation to satisfy itself of its jurisdiction.  <u>Samuel-Bassett v. Kia Motors America, Inc.</u>, 357 F.3d 392, 396 (3d Cir. 2004). A federal court's jurisdiction ordinarily depends upon "the facts as they exist when the complaint is filed," <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 830 (1989), and thus events subsequent to the removal of a case to federal court that reduce the amount in controversy below the statutory minimum set forth in 28 U.S.C. § 1332 do not require dismissal, <u>State Farm Mutual Automobile Ins. Co. v. Powell</u>, 87 F.3d 93, 97 (3d Cir. 1996).  However, a "distinction must be made between subsequent <u>events</u> that change the amount in controversy and subsequent <u>revelations</u> that, in fact, the required amount was or was not in controversy at the commencement of the action." <u>Id.</u> (emphases in original, alterations omitted). "Subsequent revelations that the jurisdictional minimum amount in controversy was never met require a dismissal for lack of jurisdiction." <u>B&P Holdings I, LLC. v. Grand Sasso, Inc.</u>,114 Fed. Appx. 461, 464, 2004 WL 2190937 at *2 (3d Cir. 2004) (citing <u>Powell</u>, 87 F.3d at 97).

In <u>State Farm Mutual Automobile Insurance Co. v. Powell</u>, the Third Circuit considered the impact of the district court's realization that, of three insurance policies claimed to be applicable in the Complaint, only two were actually valid.  <u>Powell</u>, 87 F.3d at 97.   The Third Circuit deemed this discovery to constitute a post-filing "revelation" regarding the status and validity of the claims in the Complaint at the time of filing, and thus distinguished the revelation from a "subsequent event" that altered the amount of a plaintiff's potential recovery.  <u>Id.</u>  In a recent case, <u>Carlisle v. Matson Lumber Co.</u>, the Third Circuit emphasized that this revelation-or-event-analysis "is the kind of determination that courts are explicitly permitted, if not

21

encouraged, to rely upon when questioning the jurisdictional basis for a suit." Carlisle v. Matson Lumber Co., 2006 WL 1518922 at *6 -7 (3d Cir. June 2, 2006).  A respected treatise also cautions that the "[f]ailure to satisfy the jurisdictional amount from the outset, although not recognized until later, is not a subsequent change that can be ignored." 15 James W. Moore et al., Moore's Federal Practice ¶ 102.104[3], at 102-167 (3d ed.1998).

Here, upon review of the contractual arrangement between HP and Marketsource, which provides that the total yearly cost of the broadcast representative, not including margin and overheard, is $69,437, it is clear that even if HP would have paid Marketsource less had Plaintiff not worked on February 20, 2005, it would not have paid Marketsource $75,000.01 less. Therefore, to the extent that Marketsource was enriched by Plaintiff's work on February 20, 2005, there is no doubt that it was by an amount not in excess of $75,000.

Furthermore, while Plaintiff makes no mention of quantum meruit in his complaint, he suggests in his brief that quantum meruit is the quasi-contractual legal theory through which his damages should be measured.  Quantum meruit is measured by the reasonable value of the services actually rendered. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 438, 608 A.2d 280 (1992); Shapiro v. Solomon, 42 N.J.Super. 377, 383, 126 A.2d 654 (1956); Rabinowitz v. Massachusetts Bonding & Ins. Co., 119 N.J.L. 552, 556, 197 A. 44 (E. & A.1938).  While the Court could not properly consider the emails attached by Plaintiff to his opposition in connection with the motion for judgment on the pleadings, it may do so to the extent that such evidence sheds light on the amount in controversy at the time suit was first brought.  See Powell, 87 F.3d at 97.  Two of the emails submitted by Plaintiff are relevant to this inquiry.  The first is the email from Donna Black, an HP employee, to Jessica Stone, a Marketsource employee, explaining that

when HP hired broadcast representatives outside of Marketsource and HP, it paid the

representative anywhere from "$500-$2500 a day depending on their experience."  Email from

Donna Black, Employee of Hewlett-Packard, to Jessica Stone (Feb. 17, 2005) (the "Black

email"); Pl.'s Ex. D.  The second relevant email is from Jessica Stone, a Marketsource employee,

to Plaintiff, which provides: "If you are to work this weekend, I want to make sure you are

properly compensated for your extra hours.  Normally ... we pay those hours out at the standard

ESD the rate of $15/hr."  Email from Jessica Stone, Employee of Marketsource, Inc., to Oscar

Dovale, Employee of Marketsource, Inc. (Feb. 18, 2005) (the "Stone email"); Pl.'s Ex. C.  Thus,

it is clear that under a <u>quantum</u> <u>meruit</u> measurement of damages, the services Plaintiff provided

on February 20, 2005 were worth an amount no greater than $2,500 based upon the Black email

and an amount no greater than $360 (assuming, <u>arguendo</u>, that Plaintiff worked twenty four hours

at fifteen dollars per hour) based upon the Stone email.  Even Defendant, who removed the case

to federal court, notes that the hourly rate quoted by Jessica Stone in her email to Plaintiff

"highlight[s] the disingenuousness of Plaintiff's position":

> [A]ssuming that this e-mail could be twisted into a definite promise to pay
> Plaintiff additional compensation above his normal salary on February 20[, 2005]
> and assuming Plaintiff worked ten hours on  February 20, [2005,] he would be
> eligible for a payment of $150.  Instead, at various points in this litigation,
> Plaintiff has stated that he is entitled to anywhere from $75,000 to $150,000.
>
> Def.'s Reply Br. at 6 n.5.

Indeed, Plaintiff's $150,000 settlement demands were the basis of the Court's denial of his

motion to remand on October 7, 2005, since neither Plaintiff's initial or First Amended

Complaint specified an amount of damages.  <u>Dovale v. Marketsource, Inc.</u>, 05-CV-2872,  Order

(Oct. 7, 2005) at ¶ 5.  However, it is now apparent to a legal certainty, <u>see</u> <u>St. Paul Mercury</u>

<u>Indemnity Co. v. Red Cab Co.</u>, 303 U.S. 283, 288-89 (1938), that Plaintiff's claim is, and always was, for less than the statutory amount of $75,000.01 required by 28 U.S.C. § 1332 .  Therefore, this Court lacks jurisdiction over this matter and the case is remanded to the Superior Court of New Jersey, Law Division, Burlington County, case number 05-1076-L.

## III. CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is denied and the case is remanded to the Superior Court of New Jersey, Law Division, Burlington County, case number 05-1076-L.

S/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: August 17 , 2006

24